## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**KATHERINE KELLER as the surviving child of decedent, TREVA STUCK as the Special Administrator Of The ESTATE OF TREVA STUCK**

**Plaintiffs,**

v.

**DIVERSICARE OF COUNCIL GROVE, LLC
DIVERSICARE MANAGEMENT SERVICES LP
DIVERSICARE HEALTHCARE SERVICES LLC**

**Defendants.**

**Case No. 2:23-cv-02556-JWB-ADM**

**JURY TRIAL DEMANDED**

## PLAINTIFFS' SECOND COMPLAINT FOR DAMAGES

The Plaintiffs, by and through undersigned counsel, submits this Complaint for Damages against the above-named Defendant, and in further support, states and alleges as follows:

### PLAINTIFFS

1.      Treva Stuck ("Resident") suffered an avoidable fall on or about December 31, 2021, at Diversicare of Council Grove – 400 Sunset Drive., Council Grove, KS 66846.

2.      Resident died from the avoidable fall on January 11, 2022.

| Cause of Death: | Approximate Interval: Onset to Death |
|---|---|
| ASPIRATION PNEUMONIA | 7 DAYS |
| HIP FRACTURE | 7 DAYS |

Other Significant Conditions:

3.      Plaintiff, Katherine Keller, is and always relevant hereto, an adult over the age of 21 and a citizen of Kansas.

4.      Plaintiff Katherine Keller is a surviving child of Resident, and therefore, a member of the class of individuals authorized to pursue a wrongful death claim pursuant to K.S.A. § 60-1902.

5.	Plaintiff Katherine Keller is the Special Administrator of the Estate of Treva Stuck as evidenced by Letters of Special Administration issued by the Lyon County District Court, Case No., LY-2023-PR-300014

6.	Treva Stuck was a citizen of Kansas prior to and at the time of her death.

7.	The Estate of Treva Stuck is a citizen of Kansas.

**DEFENDANTS**

8.	Plaintiffs incorporate by reference the allegations previously set forth and further alleges as follows:

**DIVERSICARE OF COUNCIL GROVE, LLC**

9.	At all times relevant, Diversicare of Council Grove, LLC was a Delaware limited liability company and owned, operated, managed, maintained, and/or controlled, in whole or in part, and did business as Diversicare of Council Grove ("Facility" or "the Facility") located at 400 Sunset Drive., Council Grove, KS 66846.

10.	As such, Diversicare of Council Grove, LLC was engaged in providing ancillary medical services to persons requiring such services, including Resident, by owning, operating, managing, maintaining, and controlling the Facility.

11.	Consequently, Diversicare of Council Grove, LLC, owed a duty to Resident to use reasonable care for Resident's safety while under the care and supervision at the Facility.

12.	Defendant Diversicare of Hutchinson is a citizen of Delaware based on the citizenship of the LLC's sole member is Diversicare Kansas LLC being Delaware.

## DIVERSICARE HEALTHCARE SERVICES LLC

13.     At all times relevant to this action, Defendant Diversicare Healthcare Services Llc was a Delaware limited liability company and was engaged in providing ancillary medical services to persons requiring such services, including Resident, by owning, operating, managing, maintaining, and controlling the Facility.

14.     At all times relevant to this action, Diversicare Healthcare Services LLC, and/or individuals or entities acting on its behalf, operated, managed, maintained, and/or controlled, in whole or in part, the Facility.

15.     Diversicare Healthcare Services LLC, and/or individuals or entities acting on its behalf, operated, managed, maintained, and controlled the Facility by exercising final authority over: (1) Staffing budgets; (2) The development and implementation of nursing policies and procedures; (3) The hiring and firing of the facility leadership.

16.     These actions and business decisions had a direct impact on the care provided to all residents including Resident.

17.     Consequently, Diversicare Healthcare Services LLC owed a duty to Resident to use reasonable care for Resident's safety while under its care and supervision at the Facility and breached said duty for all the reasons stated in this Petition.

18.     Defendant Diversicare Healthcare Services LLC is a citizen of Delaware based on the citizenships of the LLC's members being Delaware for DAC Acquisition LLC and Delaware for DAC Newcorp, Inc.

## DIVERSICARE MANAGEMENT SERVICES LP

19.     At all times relevant to this action, Defendant Diversicare Management Services LP. Is a Tennessee limited Partnership company and was engaged in providing ancillary medical services to persons requiring such services, including Resident, by owning, operating, managing, maintaining, and controlling the Facility.

20.     At all times relevant to this action, Diversicare Management Services LP., and/or individuals or entities acting on its behalf, operated, managed, maintained, and/or controlled, in whole or in part, the Facility.

21.     Diversicare Management Services LP., and/or individuals or entities acting on its behalf, operated, managed, maintained, and controlled the Facility by exercising final authority over: (1) Staffing budgets; (2) The development and implementation of nursing policies and procedures; (3) The hiring and firing of the facility leadership.

22.     These actions and business decisions had a direct impact on the care provided to all residents including Resident.

23.     Consequently, Diversicare Management Services LP owed a duty to Resident to use reasonable care for Resident's safety while under its care and supervision at the Facility and breached said duty for all the reasons stated in this Petition.

24.     Defendant Diversicare Management Services LP is a citizen of Delaware and Tennessee based on the citizenships of the LP's members being Delaware for Diversicare Healthcare Services LLC and Tennessee for DMS GP LLC.

## DEFENDANTS' JOINT ENTERPRISE/VENTURE

25.     Plaintiffs incorporate by reference the allegations previously set forth and further alleges as follows:

26. Defendants Diversicare of Council Grove, LLC, Diversicare Healthcare Services LLC; and Diversicare Management Services LP ("Joint Venture Defendants") were engaged in a joint venture in that:

    a. The Joint Venture Defendants had an agreement, express and/or implied, among the members of the group to operate the Facility, a Kansas licensed skilled nursing facility;

    b. The Joint Venture Defendants had had a common purpose to operate the Facility, a Kansas licensed skilled nursing facility;

    c. The Joint Venture Defendants had a community of pecuniary interest in the operation of the Facility, a Kansas licensed skilled nursing facility; and

    d. The Joint Venture Defendants had had an equal right to a voice in the direction of the operation of the Facility, a Kansas licensed skilled nursing facility.

    e. There has been always a close relationship between the Joint Venture Defendants relevant.

27. Because of the joint venture, the Joint Venture Defendants owed a joint duty to Resident to use reasonable care for their safety while under their care and supervision at the Facility.

## JURISDICTION AND VENUE

Plaintiffs incorporate by reference the allegations previously set forth and further alleges as follows:

28. Each member of each defendant and each limited partner of the limited partner defendant are citizens of the Tennessee and Delaware. Thus, each defendant is a citizen of Tennessee and Delaware.

29. Plaintiff is a citizen of Kansas.

30. Therefore, Plaintiff brings his claims contained in the Complaint under federal diversity jurisdiction, 28 U.S.C. § 1332(a)(1), as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

31.     Pursuant to K.S.A. § 60-308(b)(2), defendants. purposefully availed themselves of the protections and/or benefits of the laws in Kansas by committing entering into contracts with entities in Kansas that then permitted them to commit tortious acts within the state including, but not limited to, failing to ensure that Diversicare of Council Grove, LLC had appropriate policies and procedures for its nursing staff, was properly capitalized, funded, staffed, and that staff received adequate training and supervision, thereby making jurisdiction proper in this Court.

32.     A substantial part of the events or omissions giving rise to the claims described in the Complaint occurred in Kansas, thereby making venue proper in this Court.

## AGENCY

33.     The acts hereinafter described were performed by the agents, representatives, servants, and employees of Defendants and were performed either with the full knowledge and consent of Defendants, and/or were performed by their agents, representatives, servants, or employees during the scope of their agency, representation, or employment with the Defendants.

34.     Furthermore, the acts hereinafter described as being performed by the agents, representatives, servants, or employees of Defendants were performed or were supposed to be performed on behalf of and/or for the benefit of Resident.

## FACTUAL BACKGROUND

35.     Plaintiffs incorporate by reference the allegations previously set forth and further alleges as follows:

### Defendants' Treatment of Resident

36.     Upon information and belief, Resident was at risk for falling.

37.     Upon information and belief, despite Resident's risk for falls/falling, none of the Facility staff created a Care Plan for resident that implemented the appropriate interventions.

38.     Upon information and belief, none of the Facility staff implemented or applied the appropriate interventions to address Resident's risk of falls/falling.

39.     Upon information and belief, from admission to his discharge, none of the Facility staff:

    a.   Properly assessed Resident's risk of falls/falling;

    b.   Implemented or provided the appropriate interventions to prevent Resident from falling, including appropriate supervision and fall preventions;

    c.   Monitored or evaluated Resident's Care Plan to see if the interventions prescribed were working; or

    d.   Monitored Resident's condition, including Resident's risk for suffering an avoidable fall during this time frame.

40.     Upon information and belief, at no point while Resident was a resident at the Facility did any of the Facility management, including the Administrator, the Director of Nursing, the clinical education coordinator, anybody from defendants, or any other staff member ever provide any sort of in-service training or clinical education to the Facility staff regarding the assessment, prevention, use of interventions, monitoring, and reporting of falls/falling in residents like Resident.

41.     Upon information and belief, at no point while Resident was a resident at the Facility did any of the Facility management, including the Administrator, the Director of Nursing, the clinical education coordinator, anybody from defendants, or any other staff member ever implement the appropriate policies and procedures at the Facility regarding the assessment, prevention, use of interventions, monitoring, and reporting of falls/falling in residents like Resident.

42.     Upon information and belief, while Resident was a resident at the Facility, the Facility did not have an adequate number of staff working daily at the Facility to meet Resident's needs, perform the interventions required to prevent Resident's avoidable fall, or monitor and adequately supervise Resident's condition.

## Undercapitalization/Underfunding at the Facility

43.     Diversicare of Council Grove, LLC; Diversicare Healthcare Services LLC; and Diversicare Management Services LP had a duty to provide financial resources and support to the Facility in a manner that would ensure that each of their residents received the necessary care and services and attain or maintain the highest practicable physical, mental, and psychosocial well-being, consistent with their residents' comprehensive assessments and plans of care.

44.     Diversicare of Council Grove, LLC; Diversicare Healthcare Services LLC; and Diversicare Management Services LP had a duty to provide sufficient financial resources to ensure there was enough properly trained and supervised staff to meet the needs of their residents.

45.     Diversicare of Council Grove, LLC had no autonomy to decide their own financial course, including no authority to determine how much staff they could provide or what resources were available to the staff.

46.     No individuals at the Facility are involved in decision making about the financial operations or what its resources were and where they would be spent.

47.     Transactions directed by Diversicare Healthcare Services LLC and Diversicare Management Services LP left the Facility with insufficient cash to provide sufficient qualified staff to meet the individual needs of the residents in their facility during Resident's time there.

**LEGAL BASIS FOR DIVERSICARE OF COUNCIL GROVE, LLC; DIVERSICARE HEALTHCARE SERVICES LLC; AND DIVERSICARE MANAGEMENT SERVICES LP**

**Joint Venture/Enterprise**

48.      Diversicare of Council Grove, LLC; Diversicare Healthcare Services LLC; and Diversicare Management Services LP are collectively referred to herein as the "Corporate Defendants."

49.      The Corporate Defendants directed, operated, and managed the day-to-day functions of their skilled nursing facilities – including the Facility – by and implementing policies, practices and procedures affecting all facets of the Facility, including resident care.

50.      These policies manipulate and control the physical and financial resources and prohibit decision making at the Facility level.

51.      This directly affects resident care by determining things such as what type and quality of nourishment is available for residents; what safety measures may and may not be used depending upon cost; the integrity of the building itself; and most importantly, how much staff is available to provide resident care and how well trained and supervised are the staff to meet the needs of the residents.

52.      The Corporate Defendants affirmatively chose and decided to establish such operations and demand they be implemented.

53.      Upon information and belief, such operations included the following dangerous policies and practices: (a) the aggressive recruitment and admission of high acuity patients to increase the patient census when Defendants had already chosen to understaff the Facility and continually maintain a staff that were not qualified nor competent to provide the care required by state law, regulations and minimum standards of the medical community; and (b) the decision to retain residents whose needs exceeded the qualification and care capability of the facility's staff.

54.     The Corporate Defendants consciously chose not to implement safety policies, procedures and systems which would ensure that: (a) the acuity levels and needs of residents were consistent with the numbers and qualifications of direct caregivers; and (b) treatment/care prescribed by a physician was provided in accordance with state laws and professional standards.

55.     The Corporate Defendants, conduct themselves in a manner which indicates a joint venture/enterprise amongst them, to wit:

    a. The shared interest in the operation and management of skilled nursing facilities;

    b. The express and implied agreements amongst them to share in the profits and losses of such venture/enterprise; and

    c. The obvious actions taken showing the cooperation in furthering the venture/enterprise operating and managing skilled nursing facilities.

56.     Kansas law recognizes a joint venture/enterprise where the parties alleged to be partners in such venture/enterprise share a common interest in the property or activity or the joint venture; maintain agreements, either express or implied, to share in profits or losses of the venture/enterprise; and express actions or conduct showing cooperation in the project of the venture/enterprise.

57.     The Corporate Defendants share a common interest in the operation and management of skilled nursing facilities, including the Facility; maintain agreements to share in the profits or losses of the operation of skilled nursing facilities described herein; and operate daily evincing conduct which indicates their cooperation in the venture of operating and managing skilled nursing facilities for profit.

58.     The Corporate Defendants and Diversicare of Council Grove, LLC took direct, overt, and specific actions to further the interest of the joint enterprise.

59.     These actions were taken through a joint venture/enterprise or through the Corporate Defendants and Diversicare of Council Grove, LLC's officers, directors, managers and or employees.

60. The Corporate Defendants had an equal right to share in the profits and to bear liability for, the joint venture/enterprise.

61. Further, because the Corporate Defendants and Diversicare of Council Grove, LLC were dominated by each other, these entities had an equal right to direct or control their venture, as well as to direct or control the operation and management of the Facility.

<b>Direct Participation/Individual Actions</b>

62. The Corporate Defendants were always material to this lawsuit in the business of managing, owning, and operating a network of skilled nursing facilities throughout the Kansas and the country. One such skilled nursing facilities was the Facility where Resident was admitted for care and treatment.

63. At all times material to this lawsuit, the Corporate Defendants were fully aware that the delivery of essential care services in each of their skilled nursing facilities – including the Facility – hinged upon three fundamental fiscal and operational policies which were dictated by their choices on establishing and implementing such policies: (1) the determination of the numbers and expenditures on staffing levels; (2) the determination of the census levels within the skilled nursing facilities; and, (3) payor mix.

64. At all times material, the Corporate Defendants made critical operational decisions and choices which manipulated and directly impacted the Facility's revenues and expenditures. More particularly, the Corporate Defendants determined:

    a. The number of staff allowed to work in their chains of skilled nursing facilities including the Facility;

    b. The expenditures for staffing at the skilled nursing facilities including the Facility;

    c. The revenue targets for each skilled nursing facilities including the Facility;

d. The payor mix, and census targets for each skilled nursing facilities including the Facility;

e. Patient recruitment programs and discharge practices at each skilled nursing facilities including the Facility.

65. All cash management functions, revenues and expenditure decisions at the skilled nursing facilities level – including the Facility – were tightly managed, directed, and supervised by the Corporate Defendants.

66. It was the choices made by the Corporate Defendants which directly fixed the circumstances in the facilities and the level of care that could, and was, provided at the homes, including the Facility.

67. The Corporate Defendants formulated, established and mandated the application and implementation of the policies regarding the staffing levels and expenditures, the census levels, and payor mix.

68. The census edicts, marketing and admission practices, and resident discharge policies designed and mandated by the Corporate Defendants were implemented and such application was carefully supervised and enforced.

69. Following the mandates, the Facility functioned in accordance with them, filling empty beds, recruiting high acuity patients, and maintaining a census level and staffing level established and enforced as the Corporate Defendants deemed appropriate.

70. Accordingly, such manipulation by the Corporate Defendants as to staffing and census were motivated by the financial needs of the Corporate Defendants and the Facility as opposed to the acuity levels and needs of the residents as dictated by state and federal laws and regulations.

71. Instead of abiding by their duty to care for the residents, the Corporate Defendants chose to be guided by financial motivation which was simply to increase revenues while restricting and/or reducing expenses.

72.     The Corporate Defendants, therefore, directly participated in a continuing course of negligent conduct, requiring the Facility to recruit and retain heavier care, higher pay residents to the Facility even though the needs of the patient population far exceeded the capacity of staff.

73.     At the same time, the Corporate Defendants chose to design, create, implement, and enforce operational budgets at the Facility which dictated the level of care that could be provided and therefore deprived residents care, creating widespread neglect.

74.     In so doing, the Corporate Defendants disregarded, superseded, and violated the duties and responsibilities imposed on a licensed skilled nursing facility, in this case the Facility, by the State of Kansas.

### Corporate Malfeasance

75.     The Corporate Defendants consciously chose not to implement safety policies, procedures and systems which would ensure that: (1) the acuity levels and needs of residents were consistent with the numbers and qualifications of direct caregivers; and (2) treatment/care prescribed by a physician was provided in accordance with state laws and professional standards.

76.     Accordingly, the Corporate Defendants, by their operational choices and decision making, and to satisfy their desire to grow profits, created a dangerous condition that caused harm to residents.

77.     These choices to establish and implement such policies and the conscious decision not to implement corrective actions or procedures disregarded the duties which the State of Kansas and federal government imposed upon the Corporate Defendants and the Facility.

78.     Because the staffs were below necessary levels, and because the staffs that were present were not properly qualified or trained, the residents at the Facility including Resident, failed to receive even the most basic care required to prevent catastrophic injury and death.  This negligence and resulting injuries ultimately led to and caused Resident's injuries and death as described above.

79. During Resident's residency at the Facility, Resident sustained physical injuries and died, as described in more detail above, because of the acts, omissions, decisions, and choices made by the Corporate Defendants in operating the Facility.

80. During Resident's residency at the Facility, the Corporate Defendants negligently failed to provide and/or hire, supervise and/or retain staff capable of providing Resident with a clean, safe, and protective environment, and that, because of this failure, Resident suffered neglect, abuse, severe personal injuries, conscious pain and suffering, and deterioration of Resident's physical condition as further described above. Ultimately, Resident died because of this failure.

81. The Corporate Defendants manage, operate, and direct the day-to-day operations of the Facility and these Corporate Defendants are liable for this direct involvement in the operations of such Facility. These Corporate Defendants are therefore liable to the Plaintiffs for the neglect of and injuries to Resident.

82. The Facility and these Corporate Defendants have been named as Defendants in this lawsuit for their individual and direct participation in the torts and causes of action made the basis of this lawsuit, having:

   a. Chosen to disregard the duties and responsibilities which the Facility, as a licensed skilled nursing facility, owed to the State of Kansas and its residents;

   b. Created the dangerous conditions described by interfering with and causing the Facility to violate Kansas statutes, laws and minimum regulations governing the operation of said skilled nursing facilities;

   c. Superseding the statutory rights and duties owed to skilled nursing facilities residents by designing and mandating dangerous directives, policies, management, and day to day operation of the Facility;

   d. Caused the harm complained of herein; and

   e. Choosing to disregard the contractual obligations owed to the State of Kansas and the Federal Government to properly care for the residents in exchange for payment of funds for such care.

## Count I - (Wrongful Death Against All Defendants)

83.     At all times material hereto Resident was in a defenseless and dependent condition.

84.     As a result of Resident's defenseless and dependent condition, Resident relied upon Defendants to provide for their safety, protection, care, and treatment.

85.     At the time of the negligent acts and occurrences complained of herein and at all other times relevant hereto, Defendants, and their agents and employees, owed a legal duty to Resident to exercise that degree of skill and learning ordinarily exercised by members of their respective professions under the same or similar circumstances.

86.     At all relevant times, Defendants had a duty to act in accordance with the standards of care required of those owning, operating, managing, maintaining, and/or controlling a skilled nursing Facility.

87.     These duties required Defendants to implement and enforce policies and procedures to ensure the proper care for, and treatment of all residents including Resident.

88.     These duties required Defendants to have sufficient and qualified staff at the Facility skilled nursing facilities to ensure the proper care for, and treatment of all residents including Resident.

89.     These duties required Defendants to ensure that the Facility's nurses and other staff were properly educated and trained regarding the care for, and treatment of all residents including Resident.

90.     These duties required Defendants to ensure that the Facility was properly capitalized to ensure the proper care for, and treatment of all residents including Resident.

91.     Specifically, during their care and treatment of Resident, Defendants and their agents, servants, and/or employees breached their duties and were guilty of the following acts of negligence and carelessly by failing to measure up to the requisite standard of care, skill, and practice ordinarily exercised by members of their profession under the same or similar circumstances, including by:

a. Failing to adequately assess, monitor, document, treat, and respond to Resident's physical condition;

b. Failing to adequately assess Resident's risk of falling;

c. Failing to timely, consistently, and properly monitor, assess, and document Resident's physical condition;

d. Failing to provide adequate nursing staff to ensure Resident's 24-hour protective oversight and supervision;

e. Failing to turn and reposition Resident every two hours;

f. Failing to have enough staff at the Facility to ensure Resident's needs were being met regarding fall prevention;

g. Failing to provide adequate assistive devices and interventions to prevent Resident's falls/falling;

h. Failing to enact and carry out an adequate Care Plan regarding Resident's increased risk for falls/falling;

i. Failing to provide adequate assistance and assistive devices to prevent Resident's falls/falling;

j. Failing to adequately assess, monitor, ensure, and document the administration of adequate nutrition and hydration to Resident;

k. Failing to prevent the development and worsening of Resident's falls/falling;

l. Failing to timely report Resident's changes in condition to a physician;

m. Failing to carry out the instructions of Resident's physician;

n. Failing to adequately, timely and consistently prevent, assess, and treat Resident's risk of falling;

o. Failing to timely transfer Resident to a Facility that could provide adequate care;

p. Failing to properly supervise and train the employees, agents and/or servants of the Defendants who were responsible for the care and treatment of Resident;

q. Failing to have and/or implement appropriate policies and procedures regarding the prevention, assessment, and treatment of falls/falling in residents like Resident;

r. Failing to carry out and follow standing orders, instructions, and protocol regarding the prevention of Resident's falls/falling;

s.    Failing to ensure the skilled nursing facilities was properly capitalized.

t.    Failing to perform and measure up to the requisite standards of care required and observed by health care providers and further particulars presently unknown to Plaintiffs, but which is verily believed and alleged will be disclosed upon proper discovery procedures during this litigation.

92.    As a direct and proximate result of the individual and collective acts of negligence of Defendants as described above, Resident was harmed and suffered non-economic damages, including pain, suffering, mental anguish, disability, disfigurement, and loss of enjoyment of life; death; and other damages.

93.    As a direct and proximate result of the individual and collective acts of negligence of all Defendants as described above, Plaintiffs suffered non-economic damages including, loss of companionship, loss of comfort, loss of guidance, loss of counsel and loss of instruction, pain, suffering, bereavement, and mental anguish.

WHEREFORE, Plaintiff (individually), prays for judgment against Defendants in an amount more than $75,000.00 and in an amount a jury deems fair and reasonable including non-economic damages and past medical expenses.

## COUNT II - (Pain and Suffering by the Estate v. All Defendants)

94.    At all times material hereto Resident was in a defenseless and dependent condition.

95.    As a result of Resident's defenseless and dependent condition, Resident relied upon Defendants to provide for their safety, protection, care, and treatment.

96.    At the time of the negligent acts and occurrences complained of herein and at all other times relevant hereto, Defendants, and their agents and employees, owed a legal duty to Resident to exercise that degree of skill and learning ordinarily exercised by members of their respective professions under the same or similar circumstances.

97.     At all relevant times, Defendants had a duty to act in accordance with the standards of care required of those owning, operating, managing, maintaining, and/or controlling a skilled nursing Facility.

98.     These duties required Defendants to implement and enforce policies and procedures to ensure the proper care for, and treatment of all residents including Resident.

99.     These duties required Defendants to have sufficient and qualified staff at the Facility to ensure the proper care for, and treatment of all residents including Resident.

100.    These duties required Defendants to ensure that the Facility's nurses and other staff were properly educated and trained regarding the care for, and treatment of all residents including Resident.

101.    These duties required Defendants to ensure that the Facility was properly capitalized to ensure the proper care for, and treatment of all residents including Resident.

102.    Specifically, during their care and treatment of Resident, Defendants and their agents, servants, and/or employees breached their duties and were guilty of the following acts of negligence and carelessly by failing to measure up to the requisite standard of care, skill, and practice ordinarily exercised by members of their profession under the same or similar circumstances, including by:

   a. Failing to adequately assess, monitor, document, treat, and respond to Resident's physical condition;

   b. Failing to adequately assess Resident's risk of falling;

   c. Failing to timely, consistently, and properly monitor, assess, and document Resident's physical condition;

   d. Failing to provide adequate nursing staff to ensure Resident's 24-hour protective oversight and supervision;

   e. Failing to have enough staff at the Facility to ensure Resident's needs were being met regarding fall prevention;

f.    Failing to provide adequate assistive devices and interventions to prevent Resident's fall;

g.    Failing to enact and carry out an adequate Care Plan regarding Resident's increased risk for falls;

h.    Failing to provide adequate assistance and assistive devices to prevent Resident's falls;

i.    Failing to adequately assess, monitor, ensure, and document the administration of adequate nutrition and hydration to Resident;

j.    Failing to document the measurement of Resident's wounds adequately and concisely for proper and efficient wound treatment, management, and progression;

k.    Failing to timely report Resident's changes in condition to a physician;

l.    Failing to carry out the instructions of Resident's physician;

m.    Failing to adequately, timely and consistently prevent, assess, and treat Resident's risk of falling;

n.    Failing to timely transfer Resident to a Facility that could provide adequate care;

o.    Failing to properly supervise and train the employees, agents and/or servants of the Defendants who were responsible for the care and treatment of Resident;

p.    Failing to have and/or implement appropriate policies and procedures regarding the prevention, assessment, and treatment of falls in residents like Resident;

q.    Failing to carry out and follow standing orders, instructions, and protocol regarding the prevention of Resident's fall;

r.    Failing to ensure the nursing home was properly capitalized.

s.    Failing to perform and measure up to the requisite standards of care required and observed by health care providers and further particulars presently unknown to Plaintiff(s), but which is verily believed and alleged will.

103.    As a direct and proximate result of the individual and collective acts of negligence of Defendants as described above, Resident was harmed and suffered non-economic damages, including pain, suffering, mental anguish, disability, disfigurement, and loss of enjoyment of life.

104.     The actions of defendants were malicious, wanton, grossly negligent and reckless, and performed in reckless disregard of the welfare and safety of Resident and others, such that, in addition to damages for pain and suffering, defendants are liable for punitive damages for their grossly negligent care of Resident.

105.     At the time defendants caused and allowed Resident to suffer an avoidable fall, they knew that their conscious disregard to provide adequate staff; properly capitalize Facility, train, and/or supervise their agents, servants and/or employees during 2020 and 2021 created a high degree of probability of injury to residents, and consciously disregarded the safety of all residents including Resident.

106.     Accordingly, defendants showed a complete indifference to, or conscious disregard, for the safety of others, including Resident and warrants punitive damages be assessed against defendants in an amount that is fair and reasonable and will punish defendants and deter them and others from similar conduct.

107.     As a direct and proximate result of defendants' negligence, and complete indifference to, or conscious disregard, for the safety of others, including Resident, Resident was harmed and suffered non-economic damages, including pain, suffering, mental anguish, disability, disfigurement, and loss of enjoyment of life.

108.     The Estate is entitled to a jury trial as to the amount of punitive damages pursuant to the Seventh Amendment of the United States Constitution *and Jones v. United Parcel Services*, Inc., No. 09–3275 (10th Cir. 2011).

WHEREFORE, Plaintiff (The Estate) prays for judgment against Defendants in an amount more than $75,000.00 and in an amount a jury deems fair and reasonable under the circumstances, including non-economic damages and past medical expenses.

**Count III - (Alter Ego Against Defendant Diversicare Healthcare Services, LLC)**

109. Plaintiffs incorporate by reference the allegations previously set forth and further alleges as follows:

110. Diversicare of Council Grove, LLC ("Subsidiary") is so dominated by Diversicare Healthcare Services, LLC that the Subsidiary is a mere instrument of Diversicare Healthcare Services, LLC and are indistinct from Diversicare Healthcare Services, LLC.

111. In fact, the Subsidiary is controlled and influenced by Diversicare Healthcare Services, LLC in that Diversicare Healthcare Services, LLC exercised complete control and domination over the Subsidiary finances and business practices.

112. Specifically, Diversicare Healthcare Services, LLC' complete control and domination over the Subsidiary caused the Facility's undercapitalization and understaffing while Resident was at the Facility.

113. Diversicare Healthcare Services, LLC' complete control and domination over the Subsidiary caused the Subsidiary to operate at a loss during the years of 2020 and 2021.

114. Diversicare Healthcare Services, LLC' complete control and domination over the Subsidiary caused the Subsidiary's liabilities to exceed its assets by during the years 2020 and 2021.

115. Specifically: (1) Diversicare Healthcare Services, LLC own all or most of the capital stock of the Subsidiary; (2) Diversicare Healthcare Services, LLC and the Subsidiary have common directors or officers; (3) Diversicare Healthcare Services, LLC finance the Subsidiary; (4) Diversicare Healthcare Services, LLC subscribe to all of the capital stock of the Subsidiary; (5) Diversicare Healthcare Services, LLC caused the incorporation of the Subsidiary; (6) The Facility has grossly inadequate capital; (7) Diversicare Healthcare Services, LLC pay the salaries and other expenses or losses of the Subsidiary; (8) Diversicare Healthcare Services, LLC use the property of the Subsidiary as its own; and (9) The directors or executives of the Subsidiary do not act independently in the interest of the Subsidiary but take their orders from Diversicare Healthcare Services, LLC in the latter's interest.

116. Thus, Diversicare Healthcare Services, LLC used the corporate cloak of the Subsidiary as a subterfuge to defeat public convenience, to justify a wrong, and/or to perpetrate a fraud in that Diversicare Healthcare Services, LLC' complete control and domination of the Subsidiary depleted all the Subsidiary's assets, thereby making it unable to pay a judgment resulting from its care of residents including Resident.

117. This undercapitalization and understaffing violated Diversicare Of Council Grove, LLC's duties and the applicable standard of care owed by a skilled nursing facilities operator or manager to the Facility's residents.

118. As a direct and proximate result of the individual and collective acts of negligence of the Subsidiary – and Diversicare Healthcare Services, LLC – Resident was harmed and suffered non-economic damages including pain, suffering, mental anguish, disability, disfigurement, and loss of enjoyment of life, death, and other damages.

119.     As a direct and proximate result of the individual and collective acts of negligence of the Subsidiary, – and Diversicare Healthcare Services, LLC – Plaintiffs, suffered non-economic damages including loss of companionship, loss of comfort, loss of guidance, loss of counsel and loss of instruction, pain, suffering, bereavement, and mental anguish.

WHEREFORE, Plaintiffs, prays for judgment against Defendants in an amount more than $75,000.00 and in an amount a jury deems fair and reasonable including non-economic damages and past medical expenses.

**<u>PLAINTIFFS DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE</u>**

Respectfully Submitted,

STEELE LAW FIRM II, LLC

By: ___*/s/ Jonathan Steele*_____

Jonathan Steele  KS #24852
2345 Grand Boulevard, Suite 750
Kansas City, MO 64108
Ph: (816) 466-5947
Fax: (913) 416-9425
jonathan@nursinghomeabuselaw.com

ATTORNEYS FOR PLAINTIFF(S)

## CERTIFICATE OF SERVICE

I hereby certify that the below-signed Attorney signed the original of the above and foregoing and is maintaining the original copy at said Attorney's office, and that on September 16, 2024 a copy of the above and foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system to all parties and attorneys of record.

*/s/ Jonathan Steele*_____

Attorney for Plaintiff(s)